UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:16-CV-80023-ROSENBERG/HOPKINS

IN RE:
KLX, INC. SECURITIES LITIGATION,

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss [DE 47], Plaintiffs' Response in Opposition [DE 49] and Defendants' Reply [DE 51]. The Court has also considered Plaintiffs' Motion to Strike [DE 50], Defendants' Response in Opposition [DE 52], and Plaintiffs' Reply [DE 53], and denied Plaintiffs' Motion to Strike on August 17, 2016 [DE 54]. The Court held oral argument on the Motion to Dismiss on January 25, 2017.  For the reasons discussed below, the Motion to Dismiss is **GRANTED**.  The case is **DISMISSED WITH PREJUDICE**. The Clerk is ordered to **CLOSE** the case.

### I.     BACKGROUND

On May 18, 2016, Lead Plaintiffs International Brotherhood of Electrical Workers Local No. 38 Pension Fund Pension Plan and Steamfitters Local 449 Pension Fund ("Plaintiffs") filed their Amended, Consolidated Class Action Complaint (the "Amended Complaint") against Defendants KLX Inc. ("KLX"), Amin Khoury ("Khoury") and Michael Senft ("Senft") (Khoury and Senft, collectively, the "Individual Defendants," and together with KLX, the "Defendants") [DE 44].  Plaintiffs brought this action on behalf of themselves and a putative class of others who acquired KLX's common stock between March 9, 2015 and November 11, 2015 (the "Class Period").  Plaintiffs' two-count complaint alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.

KLX is organized under the laws of Delaware and maintains its principal place of

business in Wellington, Florida. (Compl. ¶ 18.)  Throughout the Class Period, Mr. Khoury served as Chief Executive Officer and Director, as well as Chairman of the Board of Directors of KLX.  (*Id.* ¶ 19.)  Mr. Senft served as Vice President-Chief Financial Officer and Treasurer.  (*Id.* ¶ 20.)  Each continues in these roles.  (*See* 2016 Q3 10-Q at 27.)[1]

KLX traces its roots to B/E Aerospace, Inc. ("B/E"), the "world's leading manufacturer of aircraft cabin interior products," that Mr. Khoury co-founded in 1987.  (Compl. ¶¶ 19, 27.)  In 2013 and 2014, B/E acquired seven energy services sector companies to form an energy group within B/E.  (*Id.* ¶ 34.)  In December 2014, through a spin off from B/E, KLX was formed as an independent, publicly traded company.  (*Id.* ¶¶ 29, 32.)  KLX has two divisions: the Aerospace Solutions Group ("ASG"), and the Energy Services Group ("ESG").  (*Id.* ¶ 2.)  ESG, at issue here, provides technical services and rentals to oil and natural gas exploration and drilling companies.  (*Id.*)   During the Class Period, ESG contributed 15-20% of KLX's revenues, while ASG contributed the other 80-85%.  *See* 2015 Q1 10-Q at 13; 2015 Q3 10-Q at 14 .

## II.   THE ALLEGATIONS

The Amended Complaint points to three categories of disclosures which Plaintiffs allege constitute misrepresentations, contain omissions, or create a false impression of KLX's true condition: first, that Defendants spoke in an overly-positive manner about the Company's financial health (*see, e.g.*, Compl. ¶ 48); second, that Defendants made false and misleading statements about employment figures (*see, e.g.*, *id.* ¶ 96(a)); and third, that the Company made various misrepresentations in its public disclosures as a result of failing to recognize a good will and long-term asset impairment charge at an earlier point in time (*see, e.g.*, *id*. ¶¶ 8, 125). At oral argument, Plaintiffs' counsel limited these allegations to "the [C]ompany's failure to recognize

---

[1] *Bryant v. Avado Brands, Inc*., 187 F.3d 1271, 1276–81 (11th Cir. 1999) (noticing SEC filings).

an impairment in the first quarter of 2015 versus the third quarter" by "recklessly fail[ing] to disclose that its ESG assets [were impaired]," and stated that "[t]here is no disagreement that the Defendants regularly and consistently disclosed to investors that the market was in dire straits and that it was having a negative impact on the [C]ompany." (Hr'g Tr. 21:1-7, 20:19-22.) While Plaintiffs thus backed away from the first two groups of allegations at oral argument, the Court will nonetheless discuss each of these categories below.

### III.     APPLICABLE LAW

A securities fraud claim under Section 10(b) has six elements: (1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called "loss causation." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236-1237 (11th Cir. 2008); *see also* 15 U.S.C. § 78j(b) and Rule 10b–5 17 C.F.R. § 240.10b–5.

To state a claim under Section 20(a), Plaintiffs must allege that: (1) KLX committed a primary violation of the securities laws; (2) the Individual Defendants had the power to control the general business affairs of KLX; and (3) the Individual Defendants "had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in primary liability." *Theoharous v. Fong*, 256 F.3d 1219, 1227 (11th Cir. 2001) (citation omitted). If a plaintiff fails to adequately plead a violation of Section 10(b) and Rule 10b(5), a claim under Section 20(a) necessarily fails as well. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006).

Defendants moved to dismiss the Amended Complaint based on Federal Rules of Civil Procedure 12(b)(6) and 9(b), and the Private Securities Litigation Reform Act ("PSLRA").

### A. General Motion to Dismiss

Under Rule 12(b)(6), the Court accepts Plaintiffs' factual allegations as true and draws inferences from the Amended Complaint in the light most favorable to Plaintiffs. *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009). However, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

### B. Rule 9(b) and the Private Securities Litigation Reform Act

The Amended Complaint is subject to the heightened pleading requirements of Rule 9(b) and the PSLRA. *Mizzaro*, 544 F.3d at 1238. Rule 9(b) requires that a complaint set out "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Id.* at 1237.

In addition, in 1995, Congress enacted the PSLRA "[a]s a check against abusive litigation in private securities fraud actions," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 308 (2007). The PSLRA made two key changes to securities fraud cases. First, it shifted the particularity requirement, mandating that a complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Second, it raised the pleading requirement for scienter such that, under the PSLRA, a "complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §

78u–4(b)(2).  These changes were designed to stop baseless suits at the earliest stage in a litigation. *See Waterford Twp. Gen. Emps. Ret. Sys. v. BankUnited Fin. Corp.*, No. 08-CIV-22572, 2010 WL 1332574, at *13 (S.D. Fla. Mar. 30, 2010).

The Eleventh Circuit has observed that "putting the PSLRA and [its] substantive scienter case law together yields the following stringent standard" to survive a motion to dismiss: In addition to pleading all other requisite elements, the complaint must "plead with particularity facts giving rise to a strong inference that the defendants either intended to defraud investors or were severely reckless when they made the allegedly materially false or incomplete statements." *Mizzaro*, 544 F.3d at 1238.  In reviewing an alleged violation of securities law, a court must ask itself: "When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.* at 1239.

### C.  Judicial Notice

In analyzing a motion to dismiss in a securities fraud case, the Court may consider the full text of documents incorporated by reference into the complaint and other documents as to which the Court may take judicial notice. *Tellabs*, 551 U.S. at 322.  In particular, the Court may consider the full text of securities filings alleged to contain misstatements. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276–81 (11th Cir. 1999) (noticing SEC filings).  Documents incorporated by reference may be considered if they are central to plaintiff's claim and undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).  Here the Court considers the full contents of KLX's securities filings, press releases, and other items referenced in the Amended Complaint.

### IV.  PLAINTIFFS FAIL TO PLEAD MISSTATEMENTS OR OMISSIONS

A particular statement is a "misrepresentation" under Section 10(b) and Rule 10b-5 if "in the light of the facts existing at the time of the [statement] . . . [a] reasonable investor, in the

5

exercise of due care, would have been misled by it." *IBEW Local 595 Pension and Money Purchase Pension Plans v. ADT Corp.*, 2016 U.S. App. LEXIS 16454, at *15-16 (11th Cir. Sept. 7, 2016) (quoting *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2011)). To be actionable under the securities laws, misrepresentations and omissions must also be "material." 17 C.F.R. § 240.10(b); *see also Mizzaro*, 544 F.3d at 1236. A statement is "material" if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *SEC v. Morgan Keegan & Co., Inc.*, 678 F.3d 1233, 1245 (11th Cir. 2012) (quoting *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 455 (1976)). Courts routinely examine the materiality of alleged misstatements and omissions at the pleading stage. *See, e.g.*, *Halberstein Inv., Ltd. v. Lehman Bros., Inc.,* No. 04-22517-CIV, 2006 WL 314334, at *6 (S.D. Fla. Jan. 10, 2006); *In re Miller Indus. Inc.,* 120 F. Supp. 2d 1371, 1378 (N.D. Ga. 2000). A duty of disclosure only arises when an "omitted fact was necessary to render a preexisting statement not misleading, or because securities law otherwise required its disclosure." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 681 (11th Cir. 2010).

### A. KLX's General Financial Condition and the Industry Downturn

Plaintiffs allege that "[d]espite repeated assurance to the contrary," Defendants did not disclose that "the economic downturn in the oil and gas industry was severely impacting the Company's ESG segment." (Compl. ¶ 62(a).) Alternatively, or additionally, Plaintiffs allege that, although Defendants were forthcoming about the impact the economic downturn was having on the industry and the Company, Defendants tempered these disclosures with positive statements that presented a false impression about how the Company was faring. (*See, e.g.*, *id.* ¶¶ 85-87.) Plaintiffs further allege that Defendants spoke positively about their business and its future, while "omitting negative facts." (Opp. 8; Compl. ¶¶ 74, 83, 96, 99.)

As Plaintiffs' counsel acknowledged during oral argument, KLX *did* consistently disclose that it was being negatively impacted by the market downturn. For example, as early as February 2015, Defendants stated, "folks that are really concerned about quarter-to-quarter earnings may not be happy because we are going to suffer through this period." (KLX Analyst Conf., Feb. 5, 2015, Tr. at 3, cited at Compl. ¶ 36 n.12.) Similar statements were repeated throughout the Class Period. (*See* Compl. ¶ 75 ("We've fared a lot better than the rest, but we've certainly experienced the same downturn."); KLX Analyst Conf., Aug. 12, 2015, Tr. at 8, cited at Compl. ¶¶ 81-82 (ESG "is losing money on a quarterly basis and will continue to do so for the foreseeable future.")) Having considered the actual disclosures, the Court finds that KLX disclosed that the industry downturn was negatively affecting its ESG segment. *See Harris v. IVAX Corp.*, 998 F. Supp. 1449, 1453 (S.D. Fla. 1998), *aff'd*, 182 F.3d 799 (11th Cir. 1999) (evaluating language in the *actual disclosures*).

Plaintiffs also allege that KLX misled the market about the negative impact the downturn was having on the Company by also talking about how KLX was using the downturn to its advantage—by, among other things, capitalizing on its liquidity cushion to build for the post-downturn future. (*See, e.g.*, Compl. ¶¶ 50, 65, 67, 80); *see also id.* ¶ 77 (quoting Mr. Khoury that KLX's focus "is maintaining the $1 billion-plus liquidity to be able to take advantage of the opportunities as they present themselves."). Any allegation by Plaintiffs that these were statements about current performance mischaracterizes the plain language of the *actual* disclosures and need not be credited. These allegations also fail to consider the disclosures in context, as is required by the PSLRA. *Harris*, 182 F.3d at 802 n.2 (allegedly fraudulent statements are to be considered in context). Finally, many of these statements are forward looking and, as discussed further below, are protected by the safe harbors of the PSLRA.

Plaintiffs fare no better by pointing to statements about how Defendants were "remaining optimistic, and expressing confidence that they would 'fare better' than their competitors." (Compl. ¶ 48.) It is well-settled in the Eleventh Circuit that statements that are vague, generalized, or "corporate puffery" are not actionable under the securities laws because a "reasonable investor would not base a decision on such statements." *In re Royal Caribbean Cruises Ltd. Sec. Litig.*, No. 1:11-22855-CIV, 2013 WL 3295951, at *12 (S.D. Fla. Apr. 19, 2013); *see also Next Century Comm. Corp. v. Ellis*, 318 F.3d 1023, 10287-298 (11th Cir. 2013) ("characterization of a company's performance as 'strong' constitutes puffery"). In *Royal Caribbean*, this Court found various company statements—such as "even facing such headwinds our outlook is remarkably encouraging"—to be non-actionable. *Royal Caribbean*, 2013 WL 3295951, at *12. The Amended Complaint here identifies numerous examples akin to those in *Royal Caribbean*, including statements that the business had a "strong" position, that KLX was "in an envious position," and expressions that Defendants there "confident." (*See, e.g.*, Compl. ¶¶ 64, 68, 81.) All of these are non-actionable examples of corporate optimism.

### B. Employee Headcount

Plaintiffs also allege that Defendants' statements were false and misleading because "Defendants failed to state that, at the same time the Company was hiring new employees, it was also in the midst of a massive workforce reduction." (Compl. ¶ 96(a); *see also id.* ¶¶ 64, 97.) This is simply a variation of Plaintiffs' argument (analyzed and rejected above), that Defendants were glossing over the negative effect the industry downturn was having on KLX. Plaintiffs argue, specifically, that Defendant's failure to disclose that KLX was cutting some roles amounts to an actionable misrepresentation. But Defendants *repeatedly* disclosed that its workforce would be impacted. On February 5, 2015, just prior to the Class Period, Mr. Senft spoke of the challenges facing KLX—which was synthesizing seven recently acquired companies in the midst

8

of an unprecedented industry downturn—and he disclosed that with "50% of our costs roughly being labor," "we will be turning workforce." (KLX Analyst Conf., Feb. 2, 2015, Tr. at 7, cited at Compl. ¶ 36 n.12.) During the Class Period, Defendants continued to speak (on May 20) about "taking costs out, downsizing" (Compl. ¶ 69) as well as (on August 25) "headcount efficiencies" (*id.* ¶ 89) and "significantly reducing our ongoing variable costs" (*id.* ¶ 86). Defendants' statements about hiring a specific number of "highly skilled industry professionals," (*id.* ¶ 64; *see also id.* ¶¶ 86, 160), while at the same time cutting lower-level staff, are not inconsistent. Further, these statements must be read in the context of all available information. In light of these disclosures, the Court finds that there was not a misrepresentation.

### C. GAAP and Impairment

Plaintiffs finally allege that Defendants committed fraud by failing to "recognize an impairment in the first quarter of 2015 versus the third quarter." (Hr'g Tr. 21:1-3; Compl. ¶ 55.) Like the argument regarding employee headcount, this is another variation of the argument that Defendants were glossing over the negative effect the industry downturn was having on KLX. However, a closer look reveals a dearth of misrepresentations.

KLX provided various warnings, and discussed the potential need for an impairment, throughout its disclosures. For example, KLX disclosed that impairment decisions rest on the "estimates and assumptions" of its management (2014 10-K at 61) and disclosed the factors management considers: "[o]ur judgment regarding the existence of impairment indicators and future cash flows related to intangible assets is based on operational performance of our acquired businesses, expected change in the global economy, . . . discount rates and other judgmental factors," (Compl. ¶ 60). The Company also warned that the "recent precipitous drop in oil and gas commodity prices during the second half of 2014 is likely to have a negative impact on ESG's business in 2015," (*id.*), and further warned that "[f]uture events could cause us to

9

conclude that impairment indicators exist and that goodwill or other acquired tangible or intangible assets associated with our acquired business are impaired," (2014 10-K at 61). KLX also noted that "[c]utbacks to the capital expenditure budgets of ESG's oil and gas customers" led to fewer drilling rigs and caused customers to seek "price reduction requests." (Compl. ¶ 62).

KLX disclosed that its strategy was to closely monitor costs, position resources appropriately, and "maintain sufficient liquidity to take advantage of opportunities that will present themselves." (*Id.*) As of December 31, 2014, the fair value of the ESG reporting unit exceeded the carrying value by approximately 28%. (*Id.* ¶ 72.) In addition, on May 28, 2015, KLX filed its first quarter report, which stated that the market downturn "has negatively impacted our business in the form of volume declines and pricing concessions across many of the service lines and geographies in which we operate." (*Id.*) KLX's measures to handle the downturn remained roughly the same. KLX cautioned: "there can be no assurance such measures will prevent our ESG business from suffering continued operating losses." (*Id.*) KLX identified its cash flow projections as a significant input into its assessment of its goodwill and asset values and noted that "[i]f the ESG business continues to be unable to achieve projected results or long-term projections are adjusted downward, it could negatively impact future valuations of the ESG reporting unit and result in a material impairment charge." (*Id.*) KLX repeated these warnings in August. (*Id.* ¶ 94.) This closely follows the actual risks that eventually came to fruition in KLX's November 12 disclosure. (*Id.* ¶ 142.)

Moreover, the disclosure made by KLX in a press release issued on November 12, 2015 undermines Plaintiffs' argument that Defendants committed fraud by taking an impairment in the third quarter because the very same market conditions that necessitated the impairment existed in

the first quarter. Mr. Khoury stated:

> During the third quarter of 2015, the Company performed an interim asset impairment test. The continuing downturn in the oil and gas industry, including the approximate 60 percent decrease in the price of oil, the more than 60 percent decrease in the number of onshore drilling rigs, and the resulting significant cutbacks in capital expenditures by our oil and gas customers, has resulted in a decrease in both volume and pricing for oil field services. As a result, during the third quarter of 2015, the Company determined that the carrying value of ESG's assets has been impaired. KLX therefore expects to record a non-cash, after-tax impairment charge of approximately $435 million.

(Compl. ¶ 142.)

According to Plaintiffs, (i) the 60% decline in oil prices and drilling rigs, standing alone, was what KLX disclosed as triggering the impairment, (ii) KLX should have disclosed that it had internally determined that such absolute oil price and rig count declines would trigger an impairment, and (iii) because such declines existed as of the first quarter of 2015, KLX should have taken an impairment at that time. (*See, e.g., id.* ¶¶ 56-57; Hr'g Tr. 21:25-22:9.) But, aken in reverse order, KLX disclosed a chain of events factoring into its decision: KLX stated that it took an impairment because the carrying value of ESG's assets declined because its estimation of future cash flows declined. Its estimate of future cash flows declined because its volume and pricing declined. Its volume and pricing declined because its customers cut back capital expenditures. Its customers cut back capital expenditures because oil prices and the number of rigs declined. Thus, oil prices and rig counts had some relevance, but they were several steps removed from KLX's cited reason for taking an impairment.[2]

---

[2] Plaintiffs' also ignore their own allegations that averred that "the goodwill impairment charge *resulted from KLX's inability to capitalize on the downturn* in the oil and gas industry." (Compl. ¶ 156 (emphasis added).) Additionally, the Complaint shows that oil prices were starting to rise again, and did so for several weeks, from the time when Plaintiffs allege an impairment should have occurred. (*See* Compl. ¶ 42.)

Plaintiffs' allegations regarding impairment "simply relates to the company's failure to recognize an impairment in the first quarter of 2015 versus the third quarter."  (Hr'g Tr. 21:1-3.) In the Eleventh Circuit, however, "allegations of violations of . . . GAAP, standing alone, do not satisfy the particularity requirement of Rule 9(b)."  *Ziemba v. Cascade Int'l, Inc*., 256 F.3d 1194, 1208-09 (11th Cir. 2001); *see also Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc*., 594 F.3d 783, 792 (11th Cir. 2010).  This is broadly recognized in other circuits as well. *See Ziemba*, 256 F.3d at 1208-09 (collecting cases).  Plaintiffs' dispute comes down to timing—and "[i]f all that is involved is a dispute about the timing of the writeoff . . . we do not have fraud; we may not even have negligence."  *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *see also In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1215-16 (S.D. Cal. 2010) ("judgment is involved in accounting for goodwill . . . because it depends upon predictions of future results"); *In re Loral Space & Commc'ns Ltd. Sec. Litig.*, No. 01-CIV-4388, 2004 WL 376442, at *17 (S.D.N.Y. Feb. 27, 2004) (plaintiffs must show, in making allegations about the timing of an impairment, that there was conduct "so grievous that it exceeded differences over accounting principles and rose to the level of fraud").

In *Ziemba*, the Eleventh Circuit upheld dismissal of a complaint that had "not alleged any facts suggesting actual awareness by [the Defendants] of any fraud.  Plaintiffs have pointed to no 'tips,' letters, or conversations raising inferences that [Defendants] knew of any fraud.  Furthermore, [Plaintiffs] have pointed to no facts suggesting that [Defendants were] severely reckless in not knowing about any fraud."  *Ziemba*, 256 F.3d at 1210.  Here as well, the Amended Complaint does not allege the existence of any report, document, email, or statement that, if true, suggests Defendants *knew* or were reckless not to know an impairment charge was necessary.  Plaintiffs also make no allegations as to the specifics of KLX's customers' capital

12

expenditures, KLX's volume, KLX's pricing, or KLX's estimate of future cash flows. Plaintiffs instead allege information that they aver "should have revealed the need for a different outcome." *Id.* at 1211. These sorts of allegations have been rejected by courts. *See In re Republic Servs., Inc. Sec. Litig.*, 134 F. Supp. 2d 1355, 1360 (S.D. Fla. 2001); *In re Royal Caribbean*, 2013 WL 3295951, at \*19; *In re Sawtek, Inc. Sec. Litig.* No. 6:03-cv-294, 2005 WL 2465041, at \*8 (M.D. Fla. Oct. 6, 2005). Plaintiffs' allegations are insufficient and fail as a matter of law.

## V. THE PSLRA'S SAFE HARBOR PROVISION

Because the Court finds that Plaintiffs have not alleged material misstatements or omissions, Plaintiffs do not state a claim for a violation of the securities laws and the Court need not continue its analysis. For the sake of completeness, however, the Court will do so.

The PSLRA contains two safe harbor provisions that the Court may analyze at the motion to dismiss stage for a securities fraud case. *See Harris*, 998 F. Supp. 1449; *Philadelphia Fin. Mgmt. of San Francisco, LLC v. DJSP Enterprises, Inc.*, 572 F. App'x 713, 717 (11th Cir. 2014); *Royal Caribbean*, 2013 WL 3295951, at \*16, \*20. The first protects "forward looking statements" if accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward looking statement." 15 U.S.C. § 78u-5(c)(1)(A)(i). Scienter is irrelevant to this safe harbor. *Harris*, 182 F.3d at 803. The second safe harbor protects forward looking statements, even absent cautionary language, unless plaintiff shows the statement was made with "actual knowledge . . . the statement was false or misleading." *Id.*; 15 U.S.C. § 78u-5(c)(1)(B)(i)–(ii).

### A. Forward Looking Statements with Meaningful Cautionary Language

Defendants assert that many of the alleged misstatements are protected by the PSLRA's safe harbor. Plaintiffs counter that those statements are not forward looking. For example, in the

13

May 20, 2015 conference call, Mr. Khoury remarked, "despite these headwinds, we did make important progress in adding resources and assets, gain market share and maximize future revenue growth opportunities." (Compl. ¶ 65.) In *Harris,* the Eleventh Circuit held that "when the factors underlying a projection or economic forecast include both assumptions and statements of known fact, and a plaintiff alleges that a material factor is missing, the entire list of factors is treated as a forward looking statement." *Harris*, 182 F.3d at 807. Defendants' statements have a forward looking basis (*e.g.*, "maximiz[ing] future revenue growth") combined with historical or present facts. Such statements are thus protected.

Plaintiffs further counter that Defendants' attempts at meaningful cautionary language are boilerplate and repeated. (*See, e.g.*, Compl. ¶ 108; Opp. 12-13.) The Court disagrees. Defendants' statements noted oil price and rig counts as impacting their customers which in turn affected ESG and included the following cautionary language: "If the ESG business continues to be unable to achieve projected results or long-term projections are adjusted downward, it could negatively impact future valuations of the ESG reporting unit and result in a material impairment charge." (Compl. ¶¶ 72, 94, 111 n.40.) At oral argument, Plaintiffs did not argue that such statements are boilerplate, as they were "explicit, repetitive and linked to the projections about which the plaintiff complains," as well as "specifically tailored" to KLX's business. *Royal Caribbean*, 2013 WL 3295951, at *15. Further, these warnings were not only "of a significance similar to that actually realized," *Harris*, 182 F.3d at 807, they were the precise risks that came to pass. *See Ehlert v. Singer*, 245 F.3d 1313, 1320 (11th Cir. 2001) (safe harbor attaches to warnings "of a similar significance to the risks actually realized").

Plaintiffs further argue that KLX was "minimizing the impact of th[e] cautionary language by saying other rosy things," and thus any cautionary language is not meaningful.

14

(Hr'g Tr. 56:21-22.)  The Court does not find that Defendants warned of risks only to discount their import through optimism.  Defendants expressly warned "there can be no assurance" that ESG would not continue to lose money and explained why (volume and pricing).  (Compl. ¶ 72.) Finally, Plaintiffs argue that KLX cannot warn of risks that already materialized.  (*See* Hr'g Tr. 33, 53:22–54:8; Opp. 12-13.)  But, as discussed below, the drop in oil prices and rig counts, alone, were not what KLX stated as the direct or sole reasons for impairment.  *See supra* IV.C. Plaintiffs have failed to plead any facts about the other factors for impairment, let alone that they had materialized as early as March 2015.

### B. Failure to Plead Actual Falsity

Even if a forward looking statement is not accompanied by meaningful cautionary language, a second safe harbor applies unless a plaintiff adequately alleges that a defendant made statements with "actual knowledge" that they were "false or misleading." 15 U.S.C. § 78u-5(c)(1)(B); *see also Harris*, 182 F.3d at 803.  Plaintiffs' Amended Complaint contains no relevant allegations—no reports (generated when or by whom), no conversations, no tips, no emails, no confidential witnesses—that indicate or even suggest that Defendants made any statements knowing them to be false.  *See Royal Caribbean*, 2013 WL 3295951, at *16. Therefore, Plaintiffs have not carried their burden.

## VI. PLAINTIFFS FAIL TO PLEAD SCIENTER

The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  A "strong inference" of scienter under the PSLRA "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs*, 551 U.S. at 314.  More stringent than Rule 12(b)(6), it necessitates a "comparative evaluation" of the "inferences urged by the plaintiff . . . but also

15

competing inferences rationally drawn from the facts alleged." *Id.* Contrary to the assertion of Plaintiffs' counsel that "all favorable inferences should be drawn in the favor of my clients," (Hr'g Tr. 28:11-12), under the PSLRA "[a] complaint will survive . . . only if a reasonable person would"—not just "could"—"deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged," *Tellabs*, 551 U.S. at 310; *see also Brophy v. Jiangbo Pharm., Inc.*, 781 F.3d 1296, 1302 (11th Cir. 2015).

### A. Plaintiffs' Allegations of Fraudulent Intent

Plaintiffs leading indicia of fraud is an alleged GAAP violation, which for the reasons discussed above, is not adequately pled here and is, in any event, not sufficient alone to support scienter.[3] Plaintiffs' other allegations also fail to form the required cogent and strong inference. First, Plaintiffs allege that the Individual Defendants were "hands-on managers privy to confidential and proprietary information about KLX." (Compl. ¶ 161; *see also id.* at ¶¶ 22, 158.) They also allege that because executives with more than 49 combined years of experience *(id. ¶¶* 19-20) and "spoke intelligently" about GAAP, goodwill, and cash flow, this provides "strong circumstantial evidence" that they received specific information about "undisclosed problems," (Opp. 16). This is insufficient. *In re Republic Servs., Inc. Sec. Litig.*, 134 F. Supp. 2d 1355, 1360 (S.D. Fla. 2001); *In re Royal Caribbean*, 2013 WL 3295951, at \*19; *In re Sawtek, Inc. Sec. Litig.* No. 6:03-cv-294*,* 2005 WL 2465041, at \*8 (M.D. Fla. Oct. 6, 2005). Second,

---

[3] Plaintiffs cite two cases to suggest that a GAAP violation alone supports scienter. *See* Opp. 22; Hr'g Tr. 36:12-37:7. Neither stands for this proposition. The court in *Pilgrim's Pride* found that scienter was *not* adequately pleaded when plaintiffs asserted that, because goodwill "was totally impaired when tested," it "must have been impaired six months earlier." *In re Pilgrim's Pride Corp. Sec. Litig.*, No. 2:08-cv-419-TJW, 2010 U.S. Dist. LEXIS 84260, at \*40-41 (E.D. Tex. Aug. 17, 2010). And in *Sunbeam*, plaintiffs alleged—unlike here—that employees had "tipped off" defendants as to known inaccuracies in financial statements. *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1344 (S.D. Fla. 1999).

Plaintiffs argue that because ESG is a "core business" of KLX, that supports an inference of scienter. But such an inference is disfavored. *See Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt., Corp.*, 111 F. Supp. 3d 1336, 1376-77 (S.D. Fla. 2015) (finding "core" allegation, absent allegations of fraud, could not support scienter). Third, Plaintiffs allege that Sarbanes-Oxley certifications support scienter, but fail to establish the signers were "severely reckless in certifying." *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006). Taken together, Plaintiffs' allegations strongly mirror those that the Eleventh Circuit rejected for failing to create the requisite cogent "inference of nefarious wrongdoing" in *Thompson,* 610 F.3d at 635. There, as here, the conclusory allegations lacked specificity that the defendants *knew* of wrongdoing and thus fail as a matter of law. *Id.*

### B. Indications of Non-Fraudulent Intent

By contrast, there are a number of factors in the Amended Complaint and the documents that it relies upon that weigh against finding scienter. These factors are to be considered "holistically" under *Tellabs*, 551 U.S. at 326; *see also Brophy,* 781 F.3d at 1306 ("we must consider [defendants'] arguments that weigh against an inference of scienter").

First, Plaintiffs allege no particularized facts that any Defendant knew or was severely reckless with respect to impairment. In *Brophy*, the Eleventh Circuit upheld dismissing a complaint that failed to allege "day-to-day practices" as a CFO or identify "any specific misconduct," but instead merely alleged the CFO "must have been aware" given her role in the company and some suspicious actions during the stock's decline. *Brophy*, 781 F.3d at 1302-03.

Second, Plaintiffs have not alleged a sale of stock by Defendants nor any personal motive. *Mizzaro*, 544 F.3d at 1253 n.3 ("absence of [stock sale] allegations must be assessed"). Third, Plaintiffs have not alleged that KLX's auditors objected to the timing of the impairment. Indeed, KLX's financials were audited without such an objection. (*See* 2014 10-K at F-2; 2015

17

10-K at F-2.) "[C]ourts have found the opinions of independent auditors to be highly probative of an absence of scienter." *In re Silver Wheaton Corp. Sec. Litig.,* No. 15-CV-5146, 2016 U.S. Dist. LEXIS 74162, at *11 (C.D. Cal. June 6, 2016). Nor is it alleged that KLX restated its financials. *See Druskin v. Answerthink, Inc*., 299 F. Supp. 2d 1307, 1325 (S.D. Fla. 2004) (lack of restatement undermines scienter).

Fourth, Defendants' repeated disclosure of negative information about ESG throughout the Class Period contradicts the Amended Complaint's theory that Defendants sought to conceal the down-market impact on KLX. *Pilgrim's Pride*, 2010 WL 3257369, at *14 (no inference of scienter where CFO "disclosed the negative market conditions of which he was aware"). KLX also disclosed its impairment three weeks before filing its quarterly financials. *See Rombach v. Chang*, 355 F.3d 164, 176-77 (2d Cir. 2004) (holding allegation of scienter "weakened by disclosure of . . . problems prior to the deadline to file [defendants'] financial statements").[4] Together, the non-fraudulent factors are more compelling than the fraudulent ones, and therefore Plaintiffs fail to meet their scienter burden.

### VII.   PLAINTIFFS' SECONDARY LIABILITY CLAIM FAILS

Because Plaintiffs failed to adequately plead a violation of Section 10(b) and Rule 10b-5, their claim that the Individual Defendants are liable as "control persons" under Section 20(a) of the Securities Exchange Act necessarily fail as well. *See Garfield*, 466 F.3d at 1261.

---

[4]   Further, certain of KLX's competitors disclosed impairments around the same time as KLX. While it has not arisen in this Circuit, in *Radian*, the court admitted defendants' submission of a non-party SEC filing in deciding whether defendants' alleged delay in an impairment "was an extreme departure from the range of reasonable treatment under GAAP." *In re Radian Sec. Litig.*, 612 F. Supp. 2d 594, 614, 623 (E.D. Pa. 2009); *see also In re Medicis Pharm. Corp. Sec. Litig.*, 689 F. Supp. 2d 1192, 1207, 1207 n.8 (D. Ariz. 2009) (judicially noticing "other companies' SEC filings" to support conclusion that defendants' accounting action "was not obviously or unreasonably incorrect").

## VIII.  CONCLUSION

For the reasons stated above,[5] Defendants' Motion to Dismiss is **GRANTED**, and because (i) amendment would not cure the infirmities inherent in the Amended Complaint and (ii) Plaintiffs have had adequate opportunity to amend their pleadings, this case is **DISMISSED WITH PREJUDICE**. The Clerk is ordered to **CLOSE** the case.

**DONE AND ORDERED** in Chambers in Fort Pierce, Florida this 7th day of February, 2017.

*(signature)*
Honorable Robin L. Rosenberg
United States District Judge

---

[5] The Court does not address the parties' arguments on reliance and causation because it is unnecessary for the Court's conclusion.